HOOK v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

In Banc, May 21, 1901.

1. **Evidence:** PHYSICAL FACTS: JURY'S FINDING. Courts will treat as unsaid by a witness that which in the very nature of things could not be as said. The testimony of a witness if in clear contradiction to the physical facts should be disregarded and not submitted for the consideration of a jury, and if so submitted, their finding predicated thereon should be disregarded.

2. ——: ——: ——: NEGLIGENCE: RAILROAD CROSSING. A statement of a witness that he stopped, looked and listened for an approaching train and continued to do so till his slowly-moving team was on the railroad track, when for the first time he saw the train, which was then only ten or twelve feet distant, should not be submitted to the jury, and if so submitted its finding thereon should be disregarded, if from the nature of the physical facts he could have seen or heard the approaching train, without stopping or by standing still, at any place within twenty-five or thirty feet of the track.

3. ——: ——: NEGLIGENCE: TRAVELER'S DUTY: PRECAUTION. If the traveler's view is so obstructed that he can not see an approaching train, his duty is to exercise the sense of hearing; or if he can do neither, he must use his other faculties. The question of whether he was wanting in due care does not become one for the jury simply because he could not see or hear the approaching train. He must exercise such precaution as the situation demands; and a simple failure to see or even hear, furnishes no excuse for his going on the track until he has exercised such precaution; and if his own testimony shows he has failed to do so, there is no duty for the jury to perform.

   *Held*, by VALLIANT, J., that whether or not one going upon a railroad track is negligent if he does so without first exercising that degree of care to ascertain if a train is approaching that a man of ordinary common sense and prudence in like situation would exercise, is a question of fact for the jury.

4. **Negligence:** WHISTLE: BELL: STOP: LOOK: LISTEN: The failure of those in charge of a train to give the statutory signal on approaching a railroad crossing, does not excuse or tend to relieve the traveler, attempting to cross in front of the same, from the duty to stop, look and listen, or take any other precaution which prudence requires to discover the train and avoid a collision.

5. **Statement of Witness:** PHYSICAL FACTS: VERDICT OF JURY: CONTRIBUTORY NEGLIGENCE. A railroad and a public road, in the suburbs of a town, crossed each other nearly at grade and right angles. A bluff forty-five feet high, on the side of the road from which the train was coming, ran down to the road at an angle of about forty-five degrees and with the same incline to within eight feet of the end of the ties, the eight-foot space from there to the ties being a smooth and even surface used as a path and kept comparatively free from weeds and obstructions of all kinds. On the side of the bluff in the direction from which the train came, weeds and sunflowers had grown so thick as to greatly obstruct the view. Plaintiff knew the train's time, and as he slowly approached the track, in a wagon, with his two sons, there was nothing to distract his attention, the day being clear, his sight and hearing good, his horses gentle; there was no noise except that of a wagon behind and the rumbling noise of the approaching train and that of an old woman who eighty feet beyond the track shouted to him to look out. Plaintiff testified that he was familiar with the crossing and its surroundings and at about thirty-five feet of the crossing stopped and listened and consulted his watch and observed that the train was two or three minutes past due and hearing a faint whistle up the track concluded the train had reached a small station a quarter or half mile distant, where it was accustomed to meet another train; that he could not then, because of the bluff, hear or see the train, which was coming at a speed of twenty-five or thirty miles an hour, although he looked and listened; that he did not hear the bell or whistle, but continued to look and listen, and did not see the train until his horses' feet were on the track, when the train was only ten or twelve feet distant. He did not get out of the wagon to look for the train, nor did he stop but the one time. He was sitting on a spring-seat six or eight feet above the ground. The wagon was struck, and one son killed, for whose death he sues. The engineer did not see him till the train was within sixty feet of the crossing, and then saw his horses on the track.

*Held,* by ROBINSON, J., and concurred in by SHERWOOD AND MARSHALL, JJ., that plaintiff's statement that he looked at any place

where he could have seen the approaching train is so contradictory of the physical facts that it should not have been submitted to the consideration of the jury, and no additional value is to be given such statement because the jury, under the direction of the trial court, has predicated a finding thereon. *Held*, also, that his failure to use the precaution which the law requires was made so manifest by his own testimony that the court should have declared, as a matter of law, that he was guilty of such negligence as precluded any recovery, even though it be conceded that the finding of the jury upon the question of the railroad's alleged negligence in failing to ring the bell or sound the whistle is conclusive upon the court.

*Held*, by VALLIANT, J., in which BRACE and GANTT, JJ., concur, that the plaintiff did not so fail to use such caution and care as the law requires as to justify the court in declaring, as a matter of law, that he was precluded by his own negligence from recovering for the loss of his son, but the question of his negligence was, under the circumstances, one for the jury, and the jury having found that he was not negligent, the judgment against the company should be affirmed.

*Held*, by BURGESS, C. J., that the judgment should be reversed and the cause remanded for a new trial, and it is so ordered.

Appeal from Lafayette Circuit Court.—*Hon. Richard Field,* Judge.

REVERSED AND REMANDED.

*Martin L. Clardy* and *W. S. Shirk* for appellant.

It was error to refuse to grant defendant's demurrer to the plaintiff's evidence prayed at the close of plaintiff's case, and to refuse to instruct the jury at the close of all the evidence that the plaintiff could not recover for the following reasons: (1)   Plaintiff had been familiar with the crossing for many years, and well knew whatever obstacles or difficulties there were to hearing or seeing the approach of a train from the east. Notwithstanding this, his own evidence shows that he did not

come to a full stop to look and listen for a train, but only "checked up" amidst the noise of his own wagon and that of Lewis behind him.    Under the circumstances in evidence, it was his duty to come to a full stop.    Beach on Contr. Neg., sec. 181, n. 1; Fleming v. Railroad, 49 Cal. 256; Kelly v. Railroad, 88 Mo. 548; Stepp v. Railroad, 85 Mo. 235; Henze v. Railroad, 71 Mo. 636; Zimmerman v. Railroad, 71 Mo. 486; Moberly v. Railroad, 17 Mo. App. 643; Hixson v. Railroad, 80 Mo. 341; Nosler v. Railroad, 73 Iowa 268; Tucker v. Duncan, 6 Am. and Eng. R. R. Cas. 268; Chase v. Railroad, 78 Maine 346; Benton v. Railroad, 42 Iowa 192; Koehler v. Railroad, 66 Hun (N. Y.) 566; Moberly v. Railroad, 98 Mo. 183; Railroad v. Morel, 40 Ohio St. 338; Railroad v. Townsend, 39 Kan. 115; Railroad v. Howard, 124 Ind. 280; McBride v. Railroad, 23 Pac. Rep. 814; Elliott on R. R., pp. 1776 and 1777, note 2.    (2)    This "check up," as shown by his own evidence, was only for the purpose of taking out his watch, and learning the time of day.    He knew the time the train passed over this crossing, and from looking at his watch, he concluded the train had already passed, and drove on to the crossing.    Under these circumstances he drove upon the crossing at his own peril.    Slater v. Railroad, 75 N. Y. 273; Durbin v. Railroad, 32 A. & E. R. R. Cas. 149; Railroad v. Miller, 25 Mich. 290; Elliott on R. R., p. 1776 and n. 1; Beach on Contr. Neg. (2 Ed.), sec. 188.    (3)    His own evidence shows that he checked up at a point where he was from thirty to thirty-five feet north of the crossing, and that at this point he could not see to the east at all.    From there he drove on to the crossing, without again checking up or stopping to look or listen for a train.    This was negligence, such as debars him from recovery.    Kelsay v. Railroad, 129 Mo. 372; Hayden v. Railroad, 124 Mo. 566; Fusili v. Railroad, 45 Mo. App. 535; Turner v. Railroad, 74 Mo. 602; Caldwell v. Railroad, 58

Mo. App. 455; Gardner v. Railroad, 97 Mich. 250. (4) He admits that at the time he checked up, he heard what he terms "a dim whistle," but he thought it was down west, about Myrick. Others of his own witnesses testify, that soon after the accident, when asked if he did not hear the whistle he answered, that he did hear a "dim whistle," but thought it was farther east—up about the electric light plant, and that he thought he had plenty of time to make it over the crossing. He came to either or both of these conclusions at his own peril, and drove upon the crossing at his own risk. Railroad v. Houston, 95 U. S. 697; Griffin v. Railroad, 68 Iowa 638; Seefield v. Railroad, 70 Wis. 216; Beach on Contr. Neg. (2 Ed.), sec. 188, n. 5; Bond v. Railroad, 76 N. W. 102. One who takes this risk and miscalculates must bear the consequences. Railroad v. Jacobs, 63 Ill. 178; Railroad v. Stout, 41 Ind. 149. (5) The uncontradicted and undisputed evidence of six different witnesses, who made actual measurements at the time the pictures were taken and shortly before the trial, establishes that at the same distance from the track, a locomotive could be seen coming five hundred and forty-two feet east of the crossing. Under these circumstances there is no probative force in plaintiff's declaration that he looked and listened, but did not see or hear the train until his horses were upon the track. Hayden v. Railroad, 124 Mo. 573; Kelsay v. Railroad, 129 Mo. 374, and cases cited. (6) His own evidence shows that he was oblivious to his surroundings. He declares he did not see Mrs. Martin, directly in front of him, waving her bonnet at him, nor hear her halloo to him, "at the top of her voice"— though eighty feet at most from him. And his own boy, on the seat beside him, was heard by a witness one hundred feet and over, away, to call to his father, "Papa, the train is coming." Such inattention is not tolerated by the law. It was his duty to be watchful and alert, with eyes and ears both open

to any signal or warning of danger.     Beach on Contr. Neg.
(2 Ed.), sec. 37; Railroad v. Whitacre, 35 Ohio St. 627; Bru-
ker v. Covington, 69 Ind. 33; Bassett v. Fish, 75 N. Y. 303;
Weed v. Balston Spa, 76 N. Y. 329; Hickman v. Railroad,
47 Mo. App. 74, and the thirty cases therein cited; Taylor v.
Railroad, 86 Mo. 457; Davis v. Railroad, 47 N. Y. 400; Boyd
v. Railroad, 105 Mo. 371; Maxey v. Railroad, 113 Mo. 1;
Railroad v. Priest, 50 Kan. 16; McAdoo v. Richmond, 41
Am. & Eng. Ry. Cas. 524; Elliott on R. R., p. 1772, notes 2
and 3.     (7)     If the employees in charge of the engine which
struck the plaintiff and his boys, were guilty of negligence in
failing to sound the whistle or ring the bell, yet if plaintiff
was guilty of contributory negligence by any of the acts of
omission or commission stated in the foregoing points, he can
not recover.     Corcoran v. Railroad, 105 Mo. 399; Dlauhi v.
Railroad, 105 Mo. 645; Caldwell v. Railroad, 58 Mo. App.
453; Hayden v. Railroad, 124 Mo. 566; Kelsay v. Railroad,
129 Mo. 362; Baker v. Railroad, 122 Mo. 533.     (8)     The
evidence as to the sounding of the whistle and ringing of the
bell, so overwhelmingly preponderated in defendant's favor,
that the verdict of the jury evidences the fact that they were
actuated by prejudice and passion.     Elliott on R. R., p. 1758;
Railroad v. Still, 19 Ill. 499; s. c., 71 Am. Dec. and note;
Teller v. Railroad, 30 N. J. L. 188; Railroad v. Shearer, 58
Ala. 672; McGrath v. Railroad, 63 N. Y. 522; Chapman v.
Railroad, 14 Hun (N. Y), 484; Bohan v. Railroad, 61 Wis.
391; Railroad v. Pierce, 39 Kan. 391.

*Alexander Graves* and *Blackwell & Son* for respondent.

(1)     Section 2608, Revised Statutes 1889, requiring the
bell rung or whistle sounded at the time and place therein
named, is the provision upon which this action is based.     The

failure to perform this duty enjoined by law is negligence *per se* upon the part of appellant. Karle v. Railroad, 55 Mo. 47; Hanlon v. Railroad, 104 Mo. 387; Dickson v. Railroad, 104 Mo. 501; Murray v. Railroad, 101 Mo. 242; Gratiot v. Railroad, 116 Mo. 462; Sullivan v. Railroad, 117 Mo. 245. (2) Respondent had the right "in determining whether the way is open and safe, to rely upon the presumption that the corporation will perform its duty and observe the precautions imposed upon it." Weller v. Railroad, 120 Mo. 653; Sullivan v. Railroad, 117 Mo. 214; Jennings v. Railroad, 112 Mo. 268; Lynch v. Railroad, 112 Mo. 420; Crumpley v. Railroad, 111 Mo. 152. "Such negligence alone will warrant a recovery when it appears that obedience to the requirements of the ordinance (law) would have prevented the injury, but not otherwise." Hanlon v. Railroad, 104 Mo. 387; Karle v. Railroad, 55 Mo. 482; Zimmerman v. Railroad, 71 Mo. 476; Barkley v. Railroad, 96 Mo. 367; Henry v. Railroad, 76 Mo. 293. (3) The evidence in the case is overwhelming and the jury found under the foregoing instructions (strong in favor of appellant) that neither statutory signal was given by the appellant, and the law hereinbefore cited fixes negligence *per se* upon the appellant. (4) Upon the evidence and instructions the jury found the issue upon the plea of contributory negligence against appellant. The finding can not be disturbed. It is sanctioned and sustained by the most positive decisions which this court has rendered, touching all points involved. Kenney v. Railroad, 105 Mo. 284; Weller v. Railroad, 120 Mo. 647; Sullivan v. Railroad, 117 Mo. 218; Gratiot v. Railroad, 116 Mo. 459; Baker v. Railroad, 122 Mo. 544; Kreis v. Railroad, 131 Mo. 544; Hanlon v. Railroad, 104 Mo. 384; Dickson v. Railroad, 104 Mo. 494; Murray v. Railroad, 103 Mo. 238.

ROBINSON, J.—This is an action by James Hook to recover damages for the death of his son, Henry Hook, occasioned by the alleged negligence of defendant, the Missouri Pacific Railway Company.

The case was tried by a jury and resulted in a verdict and judgment in favor of plaintiff for $5,000, and is here on defendant's appeal.

This opinion is on defendant's motion for a rehearing in this court, after the judgment of the trial court had been affirmed.

The petition filed by plaintiff is in two counts, alike in all respects, except that in the first count it is alleged that the crossing on which plaintiff and his sons were struck by defendant's train, is a public road or street in the city of Lexington, while in the second count, the crossing is described as being on a road, used by the public as such, and kept in repair by public authority and treated by defendant railway company as a public road for many years.

The negligence charged in the first count is that defendant failed and neglected to sound its whistle, or ring the bell on its engine, as required by statute, when approaching the crossing at which occurred the injury complained of. The negligence charged in the second count is the failure alone to sound the whistle.

The answer is a general denial, coupled with a plea of contributory negligence on the part of the plaintiff.

No question of pleading is involved in the case, nor are the legal propositions announced by the trial court, in its instructions to the jury, assailed as erroneous, if under the evidence the question of plaintiff's alleged contributory negligence could be said to be for the determination of the jury. The propriety of the action of the trial court in submitting the case to the jury, upon the facts before it, is the sole question for considera-

tion on this appeal, and its determination involves alone the consideration of plaintiff's duty and obligation in approaching the crossing with the team which he and his two sons were driving.

The evidence in this case shows that while plaintiff and his two sons, on the morning of June 19, 1896, were driving upon one of the public streets in the outskirts of the city of Lexington in this State, called Mill street, where the same crossed the tracks of the defendant's railroad, the wagon in which they were riding was run into by a train upon defendant's road, and all the parties therein were thrown from it, and the plaintiff's minor son, Henry Hook, was killed; that the road or street upon which they were traveling crossed the tracks of defendant's railroad at grade, and almost at right angles; that at the intersection of the railroad with Mill street, upon which plaintiff and his sons were traveling at the time of the accident, and for several hundred feet to the east of the crossing, the railroad runs practically east and west, and that on the north side of the railroad track and to the east of Mill street, there is a tall hill, upon the sides of which weeds and sunflowers had grown so thick as to greatly obstruct the view of an approaching train from the east, to one traveling south upon Mill street; that the south slope of this hill, which faces the railroad track, stands at an angle of about forty-five degrees, and its base comes up to within eight feet of the north end of the ties on defendant's railroad, and that this eight-foot space from the foot of the hill to the railroad ties, is a smooth and even surface, used as a path, and is kept comparatively free and clear of weeds and growth of all kinds. From the public road, upon which plaintiff was driving, the hill also slopes back to the east at about the same angle as it does from the railroad.

Vol 162 mo—37

As said, the time of the accident was June 19, 1896, at about eight o'clock in the forenoon, while plaintiff with his two sons were going, in a two-horse wagon, from their home to a sand bank south of the city of Lexington for a load of sand, and in the course of their route they were required to cross the track of defendant's railroad where the accident occurred. The day was clear and bright and there was nothing unusual in the surroundings or conditions at the crossings, at the time of or just preceding the accident, to disturb plaintiff or to distract his attention; that plaintiff was in the full possession of all his senses, and as he said, so far as he knew, his sense of sight and hearing was perfect; that save and except the noise made by plaintiff's horses and wagon, and that of the team driven by the witness Lewis, twenty-five or fifty feet behind plaintiff, and the sounds and shouts of warning of an old negro woman who stood about eighty feet south of the crossing calling to plaintiff to look out, a train was coming, and the rumbling noise of the approaching train that ran into plaintiff, all was quiet in the vicinity of the crossing.

Plaintiff's position at the time of the accident was on an elevated spring seat, which stood about six feet high from the ground, fastened to the side-boards of the wagon in which he and his two sons were riding. The horses driven by him were perfectly gentle, and thoroughly accustomed to the sight and noise of trains, and would not become frightened at the rapid passing of a moving train. Plaintiff testifies that he was thoroughly familiar with the crossing and its surroundings and of the time the regular trains on defendant's road were to pass this particular crossing. In fact, one of the excuses given for his going upon the crossing as he did, was that he had just examined his watch, when about thirty-five feet south of the crossing, and finding that it was then two or three minutes past the regular time of the train at that crossing, according to his watch,

and having heard a faint whistle, as he says, in the direction of Myrick, a station west of this crossing a half mile or more, he concluded it was the whistle of the train that had just passed the crossing giving its signal for Myrick, where it then would be about due. The speed of the train at the time it struck plaintiff's wagon was estimated to be twenty-five or thirty miles an hour.

Plaintiff also stated that at the time he looked at his watch, he stopped his team (to try to ascertain the whereabouts of defendant's train upon its road), but that he could neither see nor hear the train approach on account of the hill to his left that obstructed both the view and noise of the train, and that from the time and place when and where he first stopped his team until the feet of his horses were between the railroad tracks, although driving in a slow walk, and constantly looking for a train, he was unable to see it until he was thus situated, and the train was then within ten or twelve feet of the crossing.

Conceding that the finding of the jury upon the question of defendant's alleged negligence in failing to ring the bell or sound the whistle upon the engine of its train as it approached the crossing at which occurred the accident complained of, is conclusive upon this court, though based entirely upon what might properly be called negative testimony, and opposed to what seems to have been the great weight of positive testimony to the contrary, given by witnesses called both by plaintiff and defendant, the question that presents itself now is, whether, on the issues of plaintiff's alleged contributory negligence, the trial court should not have declared, as a matter of law, that he was not entitled to recover upon his own statement of the facts, notwithstanding his testimony on the question of his inability to see the approaching train upon defendant's track until it was within ten or twelve feet of the crossing from any point on the highway upon which he was driving, until his

team had actually gotten upon the crossing. A statement, however, which from the very nature of the situation and surroundings as detailed by the plaintiff and all the witnesses, could not be true, and which is in utter disregard of all the unquestioned physical facts in the case.

In the opinion of the writer, the mistake was made in this case when the trial court permitted the jury to consider the plaintiff's testimony on the question of his inability to see the approach of the train that struck his team until it was immediately upon him, that manifestly was in clear view for a distance of two or three hundred feet east of the crossing from any point on the public road for twenty-five or thirty feet north of the tracks if he had looked in the direction of the approaching train. The court will treat as unsaid by a witness that which in the very nature of things could not be as said. Though this court will not undertake to measure the probative force of the conflicting testimony of witnesses upon controverted issues of facts, but under our system of practice leave those matters where the trial court has left them, to the juries for determination, still it is not so deaf to the voice of nature or so blind to the law of physics that every utterance of a witness, in derogation of those laws, will be treated as testimony of probative value for the consideration of the jury simply because of its utterance. From the very nature of the crossing and its surroundings, as detailed by all the witnesses called by both plaintiff and defendant, and the plaintiff himself, it of necessity could not be true that plaintiff, in the full possession of his sense of sight and hearing, could not have seen or heard the train that was approaching the crossing, on defendant's tracks, until his team had reached the crossing and stepped upon it, had he stopped, looked and listened for the approach of a train, at any point on the public highway upon which he was traveling, between the north rail of the track and twenty-five or

thirty feet north of the crossing or without stopping his team had he looked in the direction from which the train was coming. When to look is to see, the mere utterance that one did look and could not see, will be disregarded as testimony by the court (Kelsay v. Ry. Co., 129 Mo. 362; Hayden v. Ry. Co., 124 Mo. 566), and no additional value is to be given to the utterance because of the fact that a jury, under the direction of the trial court, has predicated a finding thereon. As the law does not permit a witness to blind his eyes to the sight of an approaching train in full view of a crossing he is to pass, neither will the eye of the law become blinded to the true situation of the case merely because of the absurd statement of a witness or witnesses, "I looked and could not see," or the jury's indorsement of it by a finding predicated thereon, when to look was to see.

It will not be the effort, in this opinion, to try to work out the problem of just how far up or down defendant's railway tracks an object the height and size of an engine might and can be seen from a point fifteen, twenty, twenty-five or any other number of feet north of its crossing on the public road upon which plaintiff was driving, by one seated in a wagon with his head seven or eight feet above the level of the crossing (regardless of the hill with its weeds and undergrowth, to the north of the railroad and east of the public road), or to call to our aid the photographer's view of the situation and surroundings with the surveyor's notes and measurements and plats of the ground offered in evidence in the case, and which appear in the record before us, to establish and fortify our calculations, but independent of the question of the exact distance of view, up or down the track from any given point on the highway north of the crossing, a train may be seen, we all must know from common observation and experience, before a witness has testified upon the subject, as we

still know after being told by a witness to the contrary, that upon approaching a railroad track, along the side of which for eight feet from the end of the ties there is a perfectly unobstructed view of the track, if one but look, an approaching train can be seen before it and the traveler, upon the public highway crossing the tracks at right angles, comes in actual collision at the crossing. The situation itself speaks, and will not be silenced by an inconsistent utterance of a witness to the contrary, and to this visible witness the court can not blind its eyes.

The much-talked-of hill to the north of defendant's tracks and to the east of the highway upon which plaintiff was traveling at the time of the accident so often mentioned in plaintiff's testimony and brief, as an obstruction to his view, would be only of concern if the question of how far up the track the train could be seen by one standing twenty-five or thirty feet north of the crossing on the public highway, was material to the determination of this case; but as plaintiff's duty to keep a lookout for trains upon defendant's road was continuous until the crossing was reached and passed, the fact that the hill to the north of defendant's track offered an obstruction to plaintiff's view up the tracks while he was thirty-five feet north of the crossing, when he stopped and looked at his watch, is no answer to the charge of negligence against plaintiff that he did not look and observe the approaching train on defendant's road, as some nearer point to the track was reached by him, where the view up the track was unobstructed, or that he did not stop his team, that the train's proximity to the crossing might be ascertained through the sense of hearing.

This hill, in all probability, furnished the foundation upon which was constructed, under the able engineering of the learned counsel for respondent, the jury's verdict; but as plaintiff's duty was to look out for an approaching train on defendant's

road, not from the point where the hill to his left was an obstruction to his view up the track, and of which he was perfectly familiar before he stopped to make his observation, but when he had reached a point beyond the view or point of the hill when he could see up the track, be that point one, ten, twenty or thirty feet north of the crossing, the question as to the situation of the hill could serve no other purpose in the case than it was used for, to obscure the real issue in the case.

If we suppose, now, that the testimony of plaintiff be taken as a literal truth, that the train on defendant's road could not be seen approaching the Hoffman crossing, where occurred the accident in question, by one driving a team upon the highway until the feet of the horses of the team were upon the track of the railroad, what judgment does the law pass upon the conduct of one like plaintiff, who, acquainted with the crossing and the time trains are due to pass it in the usual course of the road's business, actually drives upon the track of the railroad without stopping his team at some convenient distance of the fatal crossing that he might listen to ascertain (when the sense of sight is unavailing) if a train is approaching the crossing? Without some act or thing done by defendant or some one, to induce plaintiff as a reasonably prudent man to believe that the crossing could be made in safety, without the necessity of the exercise of those precautionary requirements usually exercised at such places, the law says such conduct is negligence and precludes a recovery for resulting injuries sustained in consequence thereof. The jury from that point of view still had no office to perform. Plaintiff's conduct on that occasion, according to his own testimony, is condemned by the law, and the court should have pronounced the law's judgment thereon, and not have suffered the law to be condemned by an adverse finding of a jury upon admitted facts.

When one can not see a known threatened danger, as a fast-moving train approaching a crossing, that is desired to be passed by the traveler, on account of some intervening obstruction cutting off his view, the demand of common prudence is more imperative than ever that he call into requisition some other sense or faculty that may aid him in the acquisition of the desired information.

If for any reason the sense of sight was unavailing to plaintiff to ascertain whether the crossing of defendant's tracks could be made at that time in safety, then the sense of hearing should have been given the fullest opportunity, and his team should have been stopped at some safe distance of the crossing that the train's whereabouts might have been ascertained through the exercise of that sense. It is no answer to the charge of negligence on the part of plaintiff in this case, according to his version of the facts, to say, "I looked but could not see the train until my horses had gotten upon the tracks." If by looking a train could not be seen by plaintiff on defendant's tracks, as he says, until the danger from its approach was inevitable (where the facts of the situation, as in this case, were as familiar to plaintiff before as after the accident), then looking for the train was both an unnecessary and a useless act, and instructions predicated upon the existence or non-existence of that fact were wholly unnecessary; and that plaintiff could not see, and did not see, the train approaching that collided with his team, furnishes no excuse for his act in going upon the crossing at the time he did. However viewed, plaintiff's conduct in the premises showed a want of precaution to avoid a known danger, for the failure to exercise which coupled with that of defendant, the injury was occasioned.

Though agreeing with the learned author of the opinion in this case, when it was first heard in Division One of the court, and afterwards affirmed In Banc, "that there is no pre-

scribed act to be performed, to meet the law's requirement of duty of one approaching a railroad crossing with the intention of passing over it, applicable to every circumstance and condition," I can not agree with the conclusions reached therefrom (as applied to the facts in this case) "that when the view of the railroad is so obstructed as to render it difficult or impossible to see an approaching train, the question of whether the traveler was wanting in due care is one for the jury to determine."

Because of a want of a prescribed act to be performed, under all circumstances, by the traveler, approaching a railroad crossing, he is none the less bound to observe those standards of precaution which the law has declared applicable to the situation. If the standard is to look where sight is availing to give the needed information, then the traveler must look, and failing to do so, this, as all courts have declared, is negligence. If the sense of sight is unavailing to give the needed information, on account of the situation and surroundings, then the law has fixed another standard by which the conduct of the traveler must be measured. He must exercise the sense of hearing; if need be, he must stop and listen to ascertain if a train is approaching the crossing sufficiently near to interfere with his passing over it in safety, and if he fails to exercise that precaution (when through the sense of hearing he might have ascertained the whereabouts of the train) and is injured, the law pronounces its condemnation on such conduct; and so on, one must exercise one or all of his faculties as the situation demands, to avert a known or to-be-apprehended danger, and because the traveler is prevented from the exercise of one of his senses or faculties, on account of some intervening cause or obstacle, over which he has no control, that does not make the question of negligence arising from the non-exercise of his other senses or faculties less a question of law for the court or

more a matter of fact for the determination of the jury. And
as said before, when the standard of duty of the traveler ap-
proaching a railroad crossing is fixed, as that he must stop,
look and listen for the approach of a train, and he can by stop-
ping see or hear an approaching train, before attempting to
pass the crossing, the only question for a jury under such cir-
cumstances and in the absence of a showing that the railroad
company or its servants had done some act or thing to induce
the traveler, as a reasonably prudent man, to believe a train
would not pass the crossing before he could pass over it in
safety, is to ascertain and determine whether the traveler had
performed that duty, and where he is shown according to his
own testimony not to have done so, the jury have no office to
perform, and the court has but to pass the law's judgment upon
the fact or facts.

In the same opinion by VALLIANT, J., is found the fol-
lowing: "In the case at bar, there was no space, according
to the plaintiff's testimony, between the obstruction and the
track where he could have sat on his wagon and seen the train
coming from the east; the only way for him to have obtained
a view of the track eastward would have been to leave his
wagon and go forward, on foot, close to the track. Before we
could declare as a proposition of law that the plaintiff was
guilty of contributory negligence under these circumstances,
we would have to say not only that in our opinion ordinary
care demanded that he should have left his wagon and gone
forward on foot as close to the track as might be necessary to
enable him to see, but also that that course was so manifestly
the only one that an ordinarily prudent man would have taken,
that reasonable minds could not differ about it. But that can
not be said."

Why ordinary care did not demand that plaintiff "should
have left his wagon and go forward, on foot, as close to the

track as might be necessary to enable him to see," we are at a loss to conjecture, if it is true, without so acting he could not ascertain the whereabouts of the train on the track before going upon the dangerous and fatal crossing. If to stop, look and listen is a reasonable requirement of the traveler that he might acquire information to avert a threatened injury to himself at a railroad crossing, as well as possible damage and injury to those in charge of and riding upon trains that are constantly making these crossings, the failure of performing that requirement by the traveler is certainly not excused from the simple fact that it may be attended with some inconvenience, such as getting out of one's wagon and going forward a few feet to the head of his horses. If the situation at the crossing was such that the plaintiff could not see up the tracks of defendant's road, from his position in his wagon on the highway, until he actually drove upon the crossing, would not common prudence dictate that he should not have gone upon the dangerous crossing until by some other means or in some other way, the condition of the track near the crossing, as to trains upon it, might be ascertained, before the crossing is attempted? Or, is it to be announced as a legal proposition applicable to all cases of this character, that where one injured at a crossing, can not inform himself or herself of the train's proximity thereto, through the sense of sight, on account of some known permanent obstruction along the side of the roadway closing out the view up the railroad tracks, or where the information is inconvenient of ascertainment through the sense of sight—then the requirement that one stop and listen, is also superseded, and the matter of plaintiff's conduct at the crossing became one solely for the determination of the jury, regardless of the question whether the injured traveler tried to inform himself through the sense of hearing or not?

To my mind the fact that the plaintiff in this case, testi-

fied, and still asserts through brief of counsel, that he could not see the train's approach to the fatal crossing from his seat in the wagon, until the feet of his horses were upon the track, is a reason most urgent and imperative why he should have stopped his team, before that dangerous point was reached, left his wagon and gone forward close enough to the track to have had a view of it, or, that at least, he should have complied with the law's other demand, inspired by the dictates of the commonest prudence, stopped his team near to the crossing that the whereabouts of the train might have been ascertained through the sense of hearing. The inability to use the sense of sight, or its non-use on account of inconvenience, is no excuse for the failure to use the sense of hearing, or for refusing to place one's self in a position that the fullest opportunity of securing the needed information be afforded.

Without attempting to analyze or criticize or harmonize the various rulings of this court, in a line of personal injury cases growing out of collisions at railroad crossings, cited by appellant, wherein the court has declared as a matter of law the plaintiff's conduct negligent, with that other line of cases cited by respondent, wherein the question of plaintiff's alleged contributory negligence has been left to the determination of the jury as an issue of fact, it may be said that in both lines of cases the court, at all times, has recognized these general propositions, however they might have been applied to the particular facts of any given case, that a railroad track is of itself a warning of danger; that the traveler upon the public highway who attempts to cross it must act with care, proportionate to the known or to-be-apprehended danger of the situation, and that the driving or walking upon a railroad crossing, in front of a fast moving train, without looking or listening to ascertain its proximity thereto, is negligence per se, unless induced by the conduct of the agent of the railroad company, to believe that

he may pass the crossing in safety without the necessity of the exercise of those precautionary acts, and that when to look is to see and when to listen is to hear, the law will presume that the traveler injured at a crossing by an approaching train, either did not not look or listen for the train's approach, or that if he saw or heard the train, that he did not heed the warning, and that the failure of the railroad company to give the statutory signal on approaching a crossing does not excuse or in anywise relieve the traveler attempting to pass same, from the care and vigilance otherwise due from him, to look and listen for approaching trains before going upon a dangerous crossing.

Viewed in the light of these general propositions and tested by the rules of practice applicable to suits for personal injury, if the plaintiff here did not make out a case of negligence on his part contributing to the injury complained of, upon which the court alone should have acted, without the aid of a jury, then we have failed to see aright the facts or to apprehend the situation, as detailed from the mouths of the witnesses, as brought out by photographic representations, and as tested and approved by surveyor's notes and measurements. Upon the plaintiff's own testimony, however, from which alone the propriety of the action of the trial court in submitting this case to the jury is to be considered, stated again briefly, we have what? A man in the full possession of all his faculties, on the morning of a bright day, attempting to pass a railroad crossing, of which he is perfectly familiar as to all its surroundings, within two or three minutes, as indicated by an examination of his watch, of the time a regular train was due to make that crossing, without stopping to look or listen to ascertain whether a train was approaching the crossing, within a distance to make his attempt to cross unsafe, or otherwise, except as it may be said he stopped at a point on the highway,

about thirty-five feet from the crossing, where according to his own statement he knew he could not see a train approaching until it got within ten or twelve feet of the crossing, on account of a high hill, covered with weeds and sunflowers, that lay just north of the railroad track and to the left or east of the highway upon which he was driving, that obstructed both his view and hearing of the train; and if the court is to disregard all the conceded physical facts of the situation, and consider plaintiff's testimony, as it was uttered, then we have the plaintiff driving from that point, with the view of the approaching train up the railroad track still obstructed, so that it could not be seen by him in the wagon, although constantly looking for it, until he had driven his horses upon the track, and until the train got within ten or twelve feet of the crossing, and yet not stopping his team, to listen or to take some other precautionary measure to ascertain the train's whereabouts upon the road with reference to the crossing he was intending to pass, and that, too, without any act or thing done by the railroad company or its employee to induce plaintiff to believe that the train, then about due to pass the crossing, had done so, or that plaintiff would have time to make the crossing before the train in the usual course of the business for the road would reach there.

If such conduct on the part of the plaintiff, according to his own statement of the facts, and however those facts may be considered, was not negligence per se, but only evidence of it, from which the jury had the right to determine negligence or no negligence, according to fancy, then the instruction given in behalf of defendant herein, to the effect that if the jury believe from the evidence that plaintiff did not stop, look and listen to ascertain if a train was at that time approaching the crossing in question, before driving upon it, he was not entitled to recover, should not have been given.

If, however, the rule of conduct, or the legal requirement of duty announced in defendant's instruction was right, that the plaintiff should have stopped, looked and listened for the approach of a train upon defendant's road before driving upon the crossing in question, then, according to his own testimony, that legal duty was not performed. To stop, where one can not see or hear a train, on account of a known intervening obstruction, by one on whom the duty to stop, look and listen, to ascertain the train's proximity to a crossing before entering upon it, is imposed, is not merely the imperfect performance of a duty imposed by law upon the traveler upon the highway, but it is a complete non-compliance of that duty, as if no stop had been made, and as if no excuse was offered for it, and to such facts when shown by the plaintiff, the trial court should have applied the legal propositions announced in its instructions to the jury. The instructions asked by defendant at the close of plaintiff's testimony, and again at the close of all the testimony, that plaintiff was not entitled to recover, upon his own showing of the facts and upon all the facts of the case, should have been given.

*Brace* and *Gantt, JJ.*, concur with *Valliant, J.*, in a separate opinion, that the judgment of the circuit court should be affirmed. *Burgess, C. J.*, is of the opinion that the judgment should be reversed and the cause remanded for a new trial. *Sherwood* and *Marshall, JJ.*, hold with *Robinson, J.*, in the foregoing opinion, that the case should be reversed simply; but in order that the case may be disposed of, *Sherwood, Marshall* and *Robinson, JJ.*, will concur with *Burgess, C. J.*, that the case may also be remanded for a new trial, and it is so ordered.

PER CURIAM: Upon a rehearing the following opinion by *Valliant, J.*, in Division One, is concurred in by *Brace* and *Gantt, JJ.*:

VALLIANT, J.—This is an action for damages for the killing of plaintiff's minor son in a collision between defendant's train and a wagon driven by plaintiff, in which the child was riding, at a public crossing in or near the city of Lexington. The case was tried by court and jury. There was a verdict and judgment for plaintiff for $5,000; after unsuccessful motions for new trial the defendant brings the cause here by appeal.

There is no question raised as to the sufficiency of the pleadings. The crossing on which the collision occurred was admitted, on the trial, to be a traveled public road. The negligence charged in the petition is a failure to observe the statutory requirements to sound a whistle or ring a bell as specified in section 2608, Revised Statutes 1889. The answer is a general denial and contributory negligence on the part of the plaintiff. The answer does not specify in what the alleged negligence of the plaintiff consisted, but no objection on that ground was made to the answer. The case was tried as if the issue was properly presented in the pleadings. The issue was marked out in the instructions, and for the purposes of this appeal that is sufficient.

The testimony on the issue as to whether or not the defendant's servants in charge of the engine drawing the train sounded the whistle or rang the bell, was conflicting. But the verdict of the jury was for the plaintiff on that issue. There was substantial evidence to support it and it is not now a subject for review. It is contended by the counsel for appellant that although the testimony on this point was conflicting, it "so overwhelmingly preponderated in defendant's favor that the verdict of the jury evinces the fact that they were actuated by prejudice and passion." In view of that contention we have not dismissed the subject after merely looking to see if there was some evidence on which to base the finding, but have ex-

amined also to see if, on the whole, the evidence was of such character as to justify the charge that the verdict was the result of prejudice or passion. The plaintiff testified that he heard a faint whistle in the direction of Myrick, which was about a quarter of a mile distant to the west. The defendant's evidence showed that its east-bound train was due to arrive at Myrick just at that time, so it was not unreasonable to conclude that it was the whistle of that train which the plaintiff heard, and perhaps it was that whistle also which some of defendant's witnesses thought they heard. It was, however, not that train, but the west-bound train that collided with plaintiff's wagon. Myrick was the point at which these two trains were to pass each other. There was a good deal of evidence on this issue, and whilst that for the defendant was sufficient to have sustained a verdict if it had been for the defendant, yet the evidence for the plaintiff was of both character and quantity ample to sustain the verdict and to justify the jury against the charge of prejudice or passion. The verdict being for the plaintiff on that question and beyond impeachment, we must, in considering the further question in this case, assume it to be a fact that the whistle was not sounded nor the bell rung.

The question, then, is, was the plaintiff guilty of negligence that contributed to the injury? And since that was submitted to the jury under instructions as favorable to respondent as it could ask, the form that the question here assumes is, does that evidence on this point make out such a case of negligence on the part of plaintiff as that the court should have so declared as a matter of law, and should not have submitted the question to the jury; or does the verdict of the jury, in the light of the evidence, show that it was the result of passion or prejudice?

This is the form in which the learned counsel for respon-

Vol 162 mo—38

dent have presented the case in their argument and brief.

The collision occurred at what is called Hoffman's cross-ing, which is where the public road, indicated on the plat as West Mill street, crosses the respondent's railroad, and seems to be just at the western limit of the· city of Lexington.    There the railroad runs nearly east and west, and this public road, running nearly north and south, crosses it at right angles.    Approaching the railroad crossing from the north, as the plaintiff was ón the morning in question, there is a bluff to your left, which prevents a view of the railroad to the east.    This bluff is about forty-five feet high, but it slopes from its highest point at an angle of forty-five degrees to the bottom of the railroad cut.    The distance between the foot of this slope and the railroad track is about eight feet.    The plaintiff's testimony tended to show that at the crossing a ridge or tongue of land ran down from the bluff to the railroad track, and the bluff, and this tongue or ridge of land was covered with a thick growth of weeds and sunflower stalks from six to nine feet high, so that one approaching the crossing from the north could not see the railroad to the east until he was within six or eight feet of the track, or, as some of the witnesses said, until he was up to the track.    There was some conflict between the testimony for plaintiff and that for defendant on this point. One witness for defendant, who was on the ground the morning of the accident, shortly after it occurred, testified that sitting on his wagon twenty-five or thirty feet from the track he could see up the track to the east for a distance of about a hundred and fifty yards. Other witnesses for defendant made measurements, and from those testified that they could see to much greater distances up the track.    But those witnesses made their observations just before the trial and after the ground had been cleared of the weeds and sunflowers.    On the proposition that the view of the track was so obstructed that it could not be seen

to the east until one approached within at least six or eight feet of it, the preponderance of the evidence is with the plaintiff. In fact, the testimony of the defendant's engineer and fireman, who were in a better position than any of the witnesses, even than the plaintiff himself, to see and judge, leaves no room to doubt that the plaintiff's testimony on that point is correct. The engineer was at his post and on the lookout; this is the way he described it: "Q. What occurred at the crossing, describe it in your own language? A. Well, we struck that team on the crossing going down there, down the grade at the rate of about thirty miles an hour; and we could not, we did not see the team until they were to the track; I think I was about fifty, probably sixty feet when the horses' heads came by the corner so that I could see them, and I did not have time to do anything but just simply put the air on before we struck them. I reached for the whistle but before I could reach it we had struck the team."

The fireman testified that he was on the left side of the engine and on the lookout and could not see the horses until they were on the track. The engineer who stood on the right side and looking ahead had a better view than any one else, yet he did not see them until it was too late. The whole testimony on this point leaves no room to doubt that the situation was such that the plaintiff could not have seen the approaching train unless he had left his wagon and walked forward to within at least six or eight feet of the track.

The testimony showed that on the morning of the accident the plaintiff was driving a two-horse wagon with his two children on the driver's seat beside him, going for a load of sand, Their course was southwest on Third street to its terminus, thence west for a short distance over a macadam road to West Mill street, thence turning south down a short steep declivity into West Mill street at a point about a hundred and thirty

feet from the railroad crossing. From this point onward West Mill street was a dirt road. There was another wagon and team driven by Spencer Lewis, a witness, following behind that in which the plaintiff was driving. When the plaintiff arrived at a point, estimated by him to be from twenty to thirty-five feet of the crossing, he stopped his wagon to listen for a train. Spencer Lewis stopped his wagon about twenty-five feet behind that of plaintiff. According to Lewis the place where the plaintiff stopped was about eighteen or nineteen feet of the crossing. The plaintiff was familiar with the crossing, and knew the time the train was due there; when he stopped he consulted his watch to see if the train had passed, and finding that it was three or four minutes past that time, and hearing no whistle or bell, concluded the train had passed, and drove on to the crossing. His testimony was that he drove slowly on, looking as best he could and listening for the train; that the first he saw or heard of the engine was just as his horses reached the north rail of the track, he tried to check them but it was too late. The horses were thrown to the left and the wagon to the right of the track, the plaintiff and his two boys were thrown out, the elder of the two boys, Harry, was killed and the other injured.

A railroad crossing is itself a sign of danger, and one going upon it is esteemed negligent if he does so without first exercising that degree of care to ascertain if a train is approaching that a man of ordinary common sense and prudence in like situation would exercise. There are no prescribed acts to be performed as constituting a fulfillment of this requirement of the law, but whether or not such care has been observed in a particular case is a question of fact to be answered in the light of all the surrounding circumstances. It has frequently been held that a person going upon a railroad track without first looking and listening for an approaching train, is guilty of

negligence. But even that rule which is usually applicable, is not absolute. "It is well settled that the person traveling on the highway. is not guilty of contributory negligence because of a failure to look and listen when the surroundings are such that he can not see or hear an approaching train. * * * Though the circumstances are such as to render looking and listening of no avail, it is still the duty of the traveler to use care and caution. But when the view of the railroad is obstructed so as to render it difficult or impossible to see an approaching train, the question whether the traveler was wanting in due care is one for the jury to determine; and it is also a question for the jury, under complicated circumstances, calculated to deceive and throw a traveler off his guard." [Baker v. K. C. etc., Ry. Co., 122 Mo. 533, l. c. 544.]

Cases involving this doctrine have been so often before this court that we are at no loss for precedents, and the briefs of counsel are full of well-chosen and apt decisions. Those cases all seem to show the application of the general rule above stated to the varied conditions presented, and they also serve to show the impossibility of reducing the general rule to one of specifications.

In Hayden v. Railway, 124 Mo. 566, a demurrer to the evidence was sustained. In that case, as the plaintiff's husband, who was killed in the collision, approached the crossing, there was corn in a field to his right, which for some distance obstructed his view of the railroad, but after passing the cornfield there was a space estimated at from fifteen to thirty feet wide through which his road went when he could have had a clear view of the train if he had looked. The court held that failing to look under those circumstances was a failure to use ordinary care.

In Kelsay v. Railroad, 129 Mo. 362, the court held that the plaintiff was guilty of contributory negligence under these

conditions: "The evidence is conclusive that the embank-ment was not nearer the track than twenty-five feet on the north and extended west about to the line of the county road. There were no weeds or other obstructions between this em-bankment and the railroad towards the southeast. The rail-road was substantially straight. It is therefore established by these undisputed physical facts that plaintiff had, for a space of twenty-five feet, an unobstructed view of the track for some considerable distance, and a space in which she could have safely waited, with a gentle horse such as she was driv-ing, until a train passed. It was also shown that the road ran in a cut, four feet deep next the highway, for a distance of about four hundred feet. This distance, at least, the plaintiff could have seen along the road." [L. c. 372-3.] MACFAR-LANE, J., who delivered the opinion in that case, quotes from the opinion of BRACE, C. J., who delivered the opinion in Hayden v. Ry., supra, as follows: "It will thus be seen that it was a physical impossibility for the deceased to have failed to see the approaching train, if he looked in that direction, as it was his duty to do, while yet in a place of safety, and before en-tering upon the line of danger. Had he done so, there can be no question that he could, and would, have stopped his team until the train passed, and then crossed over in safety. But for some unexplained reason he failed to do so."

Counsel for appellant rely with much confidence on those two cases as precedents to justify a judgment for defendant in this case. But the facts in this case are quite different from the facts in either of those cases.

In Kelsay v. Railroad, supra, at the conclusion of the opinion, the court say: "This ruling does not disturb, in the least, the decision of this court in Kenney v. Railroad, 105 Mo. 270, which we think correctly decided." That case is

very much more like the case at bar than either the Hayden or the Kelsay case.

In Kenney v. Railroad, supra, BARCLAY, J., for the court, said:

"The case before us, in its present form, calls for an expression of opinion whether the plaintiff's conduct in approaching and crossing the track was negligent as a matter of law. To warrant us in reversing the finding (by the trial court) that he was not, we must be satisfied that no other conclusion than that of plaintiff's negligence in the premises is fairly deducible from the evidence, giving him the benefit of every reasonable inference that may be drawn from it. [Huhn v. Railroad (1877), 92 Mo. 440; Mauerman v. Siemerts (1879), 71 Mo. 101.] * * * It will be noted that the plaintiff stopped twice to listen for a train: first, at a distance of one hundred and twenty feet, and, afterwards, at ninety feet from the track. He heard nothing. Assuming the truth of his evidence (as the present status of the litigation requires), it is obvious that, had the signal been given by defendant, he would have been warned of the coming train in time to escape harm. His course, after his second stop, lay along a line which did not permit a view of a train until very near the track; according to his personal evidence, until within a few feet of it, and, according to other evidence on his behalf, until twenty-one feet from it. When he, seated in the buggy, drawn by a double team, was at that distance, the horses necessarily were much closer to (probably within ten feet of) the rails, and moving forward at a brisk walk. He turned toward the west, looking for a train, and, seeing none, turned eastward and discovered the engine close upon him. His horses were then nearly across the rails, so he struck them at once to hurry them forward, but the buggy did not clear the track in time to escape disaster, and the injuries followed as stated. Here plaintiff seems to

have been looking and listening for danger at various points along the road. He could not look both ways at the same time when he reached the first point of clear observation. It so happened that he looked west, first, on reaching it, instead of east, and that when he looked east, in passing over the short space to the track, it was too late to be of any avail; but his action in the premises was not such as to indicate such recklessness or want of caution as would constitute negligence as a matter of law. We are not prepared to say that his conduct was different from what the man of average prudence would do in the same circumstances. He was under no legal obligation to shape his action on the theory that the defendant would disregard the plain requirements of law respecting a signal of its coming train. He was confronted with peculiar conditions, shown by the topography of the crossing, and was bound to use such care as would ordinarily be exercised by an intelligent man amid such surroundings. Whether he did so or not, was a question of fact on the case here made. [Johnson v. Railroad (1883), 77 Mo. 546; Kellogg v. Railroad, (1879), 79 N. Y. 72; Greany v. Railroad (1886), 101 N. Y. 419; Davis v. New York Cent. etc. Co. (1872), 47 N. Y. 400; Randall v. Railroad (1882), 132 Mass. 269; Tyler v. Railroad (1884), 137 Mass. 238.] The trial court did not err in refusing to give an instruction that plaintiff could not recover."

The case at bar is a stronger one for the plaintiff than the case last cited. There, there was space after passing the obstruction in which the plaintiff could have sat in his buggy and seen the train before it was upon him if he had looked to the east first, or if he had stopped again after reaching that space. But having stopped and listened before reaching that point and hearing no signal he drove on, and when he reached the clear space he looked first to the west and seeing no train in that direction he looked to the east, but it was too late. In

the case at bar, there was no space, according to the plaintiff's testimony, between the obstruction and the track, where he could have sat in his wagon and seen the train coming from the east; the only way for him to have obtained a view of the track eastward would have been to leave his wagon and go forward, on foot, close to the track. Before we could declare as a proposition of law that the plaintiff was guilty of contributory negligence under those circumstances, we would have to say not only that in our opinion ordinary care demanded that he should have left his wagon and gone forward on foot as close to the track as might be necessary to enable him to see, but also that course was so manifestly the only one that an ordinarily prudent man would have taken, that reasonable minds could not differ about it. But that can not be said.

The testimony of the engineer in the case last cited is strikingly like that of the engineer in this. He said: "When we got almost to the road crossing, I saw a team coming right on the rails, the horses' forefeet just inside the north rail. When first I saw them we were about thirty feet from the crossing, and were running about twenty-five miles an hour. . . . . The first I saw he was coming on the track. I immediately shut my engine off and called for brakes." Commenting on this evidence the court said: "The engineer was at his post, on the side of the cab from which the plaintiff was approaching, and if he could not see the buggy until five-sixths of a second before reaching the point of crossing, it is measurably clear that the man in the buggy could not have seen the engine much sooner."

In Henze v. Railroad, 71 Mo. 636, cited in appellant's brief, it was held that plaintiff's husband was guilty of negligence which barred her recovery. The court per HENRY, J., said, 1. c. 639: "Henze stopped neither to look nor listen, but drove on to the track without taking any precaution what-

ever to guard against danger. . . . . If he had stopped to look and listen when near the track, and could neither see nor hear the approaching train on account of the cut or other obstructions, and no signal was given from the train, he would have been justifiable in attempting to cross, and no negligence would have been imputable to him."

In Kelly v. Railroad, 88 Mo. 534, also cited by appellant, the court held plaintiff's driver guilty of contributory negligence. It seems that the driver's view of the track was obstructed by cars on a side track, and he was driving a wagon loaded with rock, which made noise that interfered with his hearing, yet he drove heedlessly on without stopping to listen. The court, per RAY, J., said, l. c. 547: "We do not understand the law to be, nor do we so hold, that it is the duty of the traveler, where the highway crosses the railroad track, absolutely and always to stop, or to fasten his team and go forward on foot to a point where he can look up and down the track, but as applied and limited to the facts of this case at such crossings and at such hours when trains are passing and liable to pass at any time, as was well known to said Coleman, we think it does require of him, where he can not see the track, to listen, and, if necessary for that purpose, on account of the noise made by his wagon, to stop and listen for the train before venturing blindly upon it. This does not, we think, exact or require any unreasonable or extraordinary prudence or precaution on the part of the traveler, but is only such prudence as a reasonable man would take for the protection of his own person and property under such circumstances."

In Petty v. Railroad, 88 Mo. 306, l. c. 318, the court, per NORTON, J., said: "But assuming that he could, at the distance of two hundred yards west of the crossing, have heard the rumbling noise of a train, and that in fact he did hear it, it does not follow that he was guilty of negligence in proceed-

ing on his way, and for these reasons: The deceased might well have concluded that the approaching train was more than eighty rods from the crossing, and that it was safe for him to proceed on his way, relying on the presumption that the defendant would not disobey the law, in failing to notify him of its approach by ringing its bell or sounding its whistle, when it came within a quarter of a mile of the crossing, to which notice he was by law entitled, and which it was the duty of defendant to give." And further on in the same opinion, referring to the statute requiring the whistle to be sounded or the bell rung when approaching a public road, it is said: "Its observance is a reasonable requirement, and for its non-observance railroad companies should be held to a strict accountability. Where it is not observed and injury results, in an action to recover damages therefor, a clear case of contributory negligence must be established before the courts, as a matter of law, exempt them from liability on that ground."

But the decision in that case is not to be interpreted to mean that one may so implicitly rely on the performance of its duty by the railroad company as to neglect his own duty under the circumstances. The rule is well stated in Weller v. Railroad, 120 Mo. 635, l. c. 652, by MACFARLANE, J.: "Railroad tracks are places of danger, though trains are run under the most careful observance of the strictest regulation; and the duty rests upon a traveler on approaching a track, to use reasonable care to ascertain if there be danger. If he use such reasonable precaution for his own safety as the law or common prudence enjoins, he has the right, in the absence of information to the contrary, in determining whether the way is open and safe, to rely upon the presumption that the corporation will perform its duty, and observe the precautions imposed upon it."

But we have already referred to and quoted from enough

cases to show what the law of this State is on this subject.

There was ample evidence to support a finding by the jury that the plaintiff approached this crossing with reasonable care, all the conditions considered. There is nothing in the evidence to suggest that he was either unmindful or heedless of the danger. His own testimony, and that of the man who was driving the wagon that followed his, is unequivocally to the effect that he stopped, listened, and consulted his watch with reference to the schedule time of that train; finding that it was three or four minutes past train time, and hearing no bell or whistle he thought the train had passed, but still drove slowly on, listening and looking as best he could. Under those circumstances, as held in the case last cited, he had a right to rely on the defendant's observance of the law and it was not negligence for him to do so. But even conceding that a fair mind might conclude that he had not used ordinary care as tested by common experience, yet it would be impossible to say that other fair minds might not reach a different conclusion, and that being the case it is a question for the jury. As to the charge that the verdict is the result of prejudice or passion, we see nothing in the evidence to support it.

The case is presented in the brief of the appellant's learned counsel under the one general proposition that the court erred in refusing to instruct the jury at the close of all the evidence that the plaintiff was not entitled to recover. The several points discussed in the brief are subdivisions of that proposition, and have been considered by us under that head. The appellant has nothing to complain of in the instruction nor in other rulings of the trial court.

There is no error in the record and the judgment of the circuit court should be affirmed.