[Civ. No. 13889. Second Dist., Div. Two. Mar. 29, 1943.]

JOHN JONAS et al., Appellants, v. LOS ANGELES RAILWAY CORPORATION (a Corporation) et al., Respondents.

Howard Painter and Reynolds & Painter for Appellants.

E. H. Chapman and Gibson, Dunn & Crutcher for Respondents.

MOORE, P. J.—Is a woman contributorily negligent who, on a dark, rainy night at an intersection adjacent to a loading platform attempts to cross the track of a car less than 50 feet from her, approaching at a speed of 20 miles per hour? Such is the question here presented.

This appeal is from the judgment for defendants after verdict against two adult sons who sued for damages alleged to have been suffered by reason of the death of their mother who was killed by the street car within an intersection.

The defendant corporation operates its railway line upon a private right of way down the center of Vermont Avenue. Defendant De Witt was its motorman in charge of the car. Vermont extends from the north across the city and for some miles into the sparsely settled suburban areas to the south. At 110th Street Vermont is 163⅔ feet wide between its curbs. The right of way is about 61 feet in width upon which lies a double track. It is paralleled on both sides by motor traffic highways. Between the two tracks stand the trolley poles. The first one is 19 feet south of the intersection; the second 108 feet; the third 235 feet. Just south of 110th Street for the accommodation of passengers is a concrete waiting platform, 60 feet in length, lying alongside of the east track. The width of 110th Street where it intersects Vermont is 57½ feet. At the northwest corner was a 250 candle power light and another 58 feet south of 110th Street on the east side of the avenue. The locus of the accident is thus seen to be open to the view, free of any obstruction other than the darkness and the elements. But for them on the night of January 23, 1941, a motorman would have had a panoramic, if not a clear, view of the intersection in the light projected by the two lamps.

Deceased had been escorted to the northwest corner about 9:35 o'clock by the witness Kalthoff. Because of the rain, according to his testimony, deceased stopped there under the canopy of the service station to await a signal from him at the time she should proceed to the platform to board the north bound car which then stood at the end of the line about six blocks to the south. In arguing the fallacy of the

judgment appellants assume that the jury should have found the facts as recited by Kalthoff. It was his recollection that after he had waited on the platform twenty minutes and had observed the car leave its station and reach about 114th Street, Mrs. Jonas started in a "trotting walk" across 110th Street on the west side of Vermont, then easterly toward the track on which the car was rolling northward; that when she reached that track the car was about 25 feet away; that she proceeded to step upon the track when she was knocked down by the car. He did not say that the speed of the car was excessive. Other testimony fixed its rate of travel by the platform at about 20 miles per hour.

Upon such proof appellants contend that the motorman was negligent in not stopping at the platform; that his negligence was the sole proximate cause of the accident; that deceased was warranted in relying upon the car's stopping at the platform when signaled to do so; that she exercised ordinary care in attempting to cross the track when the car was 20 feet from her, still moving at 20 miles per hour, and that therefore she was free from contributory negligence. In view of our conclusion we shall not encumber this discussion with details of the motorman's conduct or with an extended consideration of the authorities cited in support of the thesis that the car was negligently driven into the intersection and against the body of deceased. Suffice it to say, upon that score, that the motorman testified that visibility was not good; that Kalthoff ran across the east tracks when the car was 60 feet south of the intersection; that as he approached 110th Street he reduced his speed to 20 miles per hour; that he did not see deceased until he was at a point 30 feet south of the crossing at which time she was running across the west tracks; that he sounded the bell and did all within his power to bring the car to a stop; that deceased continued to and stepped upon the tracks in front of the lighted, noisy, moving car. If the verdict implies, as indeed it does, that the jury found in accordance with the testimony of the motorman and those who corroborated him, then they found that the motorman exercised ordinary care. By reason of such finding, the cases cited by appellants (*Badostain* v. *Pacific Electric Railway Co.*, 83 Cal.App. 290 [256 P. 576]; *Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237 [116 P. 513]; *Hook* v. *Missouri Pacific Railway Co.*, 162 Mo. 569 [63 S.W. 360]; *Amendt* v. *Pacific Electric Railway Co.*, 46 Cal.App.2d 248

[115 P.2d 588]) do not define the acts of defendants as negligence.

But had the operator of the street car been as negligent as appellants conceive him to have been, recovery would not be warranted by reason of the doctrine of contributory negligence. This issue was raised by the answer, supported by the evidence and decided by the jury adversely to appellants. On appeal our power to reverse the judgment vanishes upon our determination that some substantial evidence supports the verdict. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].)

Deceased hurriedly approached the tracks of the approaching car while it was dark and rainy. The car was aflame with light. She saw and heard it coming. According to the witness, Lipe, a passing motorist, deceased was in 110th Street, 18 feet north of its south line, "proceeding at a running walk" as she stepped upon the north bound track. At that moment the car was entering the intersection. She had no assurance that the motorman had seen her or her companion. The speed of the car was 20 miles per hour before the emergency was applied. While she knew that it is the practice for the cars to stop on signal at the "receiving platform" at 110th Street yet also, as a reasonable person, in the exercise of ordinary care, she must also have known that on a dark and rainy night a clear view of the intersection is not made perfect by the two arc lights near by. The very presence of the track was itself a warning to approach and cross with caution. (*Badostain* v. *Pacific Electric Ry. Co.*, 83 Cal.App. 290 [256 P. 576].) Such warning was accentuated by the onward movement of the lighted, rumbling, huge machine. Under such circumstances it is negligence for either a prospective passenger or any ordinary pedestrian to step upon the roadbed in front of such moving car. If the unfortunate lady failed to look she was negligent; if she looked and did not see that it was proceeding on its course she was negligent. (*Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237 [116 P. 513]; *Hook* v. *Missouri Pac. R. Co.*, 162 Mo. 569 [63 S.W. 360]; *Badostain* v. *Pacific Electric Ry. Co.*, *supra*.) Before placing herself on the track it was her duty to look in the direction from which danger might be anticipated. (*Flores* v. *Los Angeles Railway Corp.*, 15 Cal.App.2d 576, 580 [59 P.2d 856].) It was her duty "to continue to be alert to safeguard against injury." (*Lavin* v. *Fereira*, 10 Cal.App.2d

710 [52 P.2d 518].) Having stepped directly in front of the oncoming car and having been struck the instant she entered upon the track, her contributory negligence is an unavoidable inference. (*Schooley* v. *Fresno Traction Co.*, 56 Cal. App. 705, 710 [206 P. 481].)

Appellants' contention that deceased was justified in assuming that the car would stop at the platform encounters significant facts. Throughout the 100 feet south of 110th Street the car traveled at a rate of 20 miles per hour. Its speed did not diminish prior to the motorman's discovery of the presence and approach of deceased. According to the motorman, when he applied the emergency brake, he was 30 feet from 110th Street. At the same moment deceased proceeded to step upon the track directly in front of the car, at a point 18 feet north of the south line of 110th Street. To do so under the conditions recited was neither reasonable prudence nor the exercise of ordinary care. Deceased was negligent and her negligence contributed proximately to her death.

The case of *Ross* v. *San Francisco-Oakland Terminal Railways Co.*, 47 Cal.App. 753 [191 P. 703] is not applicable. There the motorman approached an arbitrary stop. He was required under all conditions to stop his car at an intersecting railway. At 110th Street on the Vermont Avenue line, the practice was to stop only to discharge or receive passengers visible to the motorman.

The judgment is affirmed.

Wood (W. J.), J., and McComb, J., concurred.