## Fox *v.* Pennsylvania Railroad Company.

*Negligence—Railroads—Private siding—Crossing—" Stop, look and listen."*

A person who passes over a private siding at a public crossing without stopping, looking and listening, when he knows or ought to know that the siding is used for moving cars is guilty of contributory negligence.

*Negligence—Railroads—Shunting cars on a siding.*

A railroad company is not guilty of negligence in shifting cars on to a siding by shunting them in, detached from the engine.

Argued April 16, 1900.   Appeal, No. 234, Jan. T., 1899, by plaintiff, from order of C. P. Centre Co., Jan. T., 1898, No. 56, refusing to take off nonsuit in case of Mary T. Fox v. Pennsylvania Railroad Company.   Before GREEN, C. J., McCOLLUM, DEAN, BROWN and MESTREZAT, JJ.   Affirmed.

Trespass for death of plaintiff's husband.

The facts appear by the opinion of LOVE, P. J., which was as follows :

This was an action of trespass brought by Mrs. Mary T. Fox against the Pennsylvania Railroad Company to recover damages for the death of her husband, who died from injuries received, at a public crossing on Race street in the borough of Bellefonte on November 13, 1897.

At the close of the plaintiff's testimony the defendant moved for a compulsory nonsuit which was granted with leave to show cause why the same should not be stricken off.   This cause came on and was argued upon the rule to show cause why the nonsuit should not be taken off.   The facts as shown by the plaintiff's evidence were about as follows : Joseph Fox, the deceased, on the morning of November 13, 1897, about 11 o'clock A. M., was standing on the pavement at the corner of High and Race streets in the borough of Bellefonte, talking with Amos Mullen.   The position he was then occupying was not more than about fifty feet distant from the defendant company's siding that was being used at the time in shifting cars.   The deceased left the corner and walked down Race street on the Bush House side of the same, at an apparently natural gait, to where the Le-

high valley siding crosses the said street, before entering the coal yard, now under lease to the Bellefonte Fuel & Supply Company. The distance to the said crossing from High street is about 177 feet. The defendant company was shifting a couple of cars loaded with coal from its main siding over the Lehigh valley siding into the coal yard. The defendant company with the two coal cars attached ahead of the locomotive, came down the main siding to about the center of High street crossing and then cut loose from the cars and shunted them over the Lehigh valley siding. The Lehigh valley siding connecting with the defendant company's siding a few feet below High street. There was a brakeman in charge of the two cars. Just as the two cars got to the eastern side of Race street at the crossing, the deceased was struck by them, just as he was about to step on the track, and his right foot cut off, and right leg and thigh crushed, from the effects of which injury he died in a few minutes. The distance from the center of High street bridge, by the siding, to where the accident occured is about 200 feet.

One of the plaintiff's witnesses, E. Schofield, testifies that the cars were shoved in at a rapid rate ; another, Earl Tuten, testifies that they were going fast. Both testify they do not know whether they were going fast as a man could run or not. They both testify they heard no whistle or bell rung. Tuten was several hundred feet down the track. Wm. Hogarth, who has a boiler repair shop, just on opposite side of main tracks of the defendant, about fifty or sixty feet from the siding, testifies that there was nothing unusual about the shifting of the cars, and that they were run in at the rate of about five miles an hour, and that the sidings were in use daily. Curt Johnson testified that he was with his team standing on High street bridge, right in front of the engine and cars and waited until the engine cut loose from the cars and reversed, and moved back up the track, when he drove over. That the engine bell was rung, and that there was nothing unusual about the shunting the cars in on the siding. The brakeman had the cars under control as he was able to place them in the yard on the trestle, where desired,

The evidence shows beyond question that a foot passenger. when within twenty feet of the crossing, by glancing up the siding could see the cars, at the High street bridge a distance of almost 200 feet up the track, without any obstruction to the

view.  Race street is a public thoroughfare and leads to the coal yard, lumber yard and some mills.  The deceased was familiar with the street and the crossing, and had been for years. There were no gates at this railroad crossing, and never had been, although it had been in use for at least thirty years or more.  The siding is a private siding for the use of the coal yard and shed.  It is but a single track, and the siding is open, from main siding of defendant company, for a distance of some fifteen feet beyond the crossing on Race street, at which point it is fenced and enclosed within the coal yard.  L. C. Green a witness for plaintiff testified he saw deceased walk by his shop on Race street and bid him the time of day, and that he saw him stop, just beyond the alley leading to Cox's livery stable, which would be perhaps twenty feet or more from the crossing and glance up the track, and that he started on.  He went into his shop and did not see him again until after the accident had occurred.  That he did not see the cars, and that they were behind Keichline's shop, a building covering part of the race south of the siding.  The accident occurred about 11 o'clock A. M., November 13, 1897, in broad daylight.  The defendant was struck either when close to the track or just as he was about to step on the track, to cross a single track; when within a few feet of the track by the proper exercise of his sight and hearing he could have seen the approaching cars for a distance of about 200 feet, without any obstruction to his vision.  The siding is also on a slight curve, and the running of the cars could have been heard for some distance.  There was no one else on the street near the crossing, and by the proper use of his senses, such as an ordinary man should make under the circumstances, the collision on his part could have and should have been avoided.  He was familiar with the street and crossing, and the ordinary daily use of the siding and had been for years.  We think that the case clearly comes within the rule as well established by abundance of authority of contributory negligence on the part of the deceased, and that the defendant is not therefore liable.

The general rule as to passengers on a highway approaching a railroad crossing, is well laid down by Pierce on Railroads, page 343.  He says: " A traveler upon a highway, when approaching a railroad crossing, ought to make a vigilant use of

his senses of sight and hearing, in order to avoid a collision. This precaution is dictated by common prudence. He should listen for signals, and look in the different directions from which a train may come. If by neglect of this duty, he suffers injury from a passing train, he cannot recover from the company, although it may itself be chargeable with negligence, or have failed to give the signals required by statute, or be running at the time at a speed exceeding the legal rate."

Growing out of the general rule as just stated the Supreme Court of this state in the case of Holden v. Penna. R. Co., 169 Pa. 1, held, that "when a collision takes place, at the moment when a person, either on foot or in a carriage, goes upon a railroad track, he cannot recover, no matter what the testimony be as to stopping, looking and listening, because the fact of the immediate collision, conclusively proves that he did not exercise his senses as to the approaching train." The same principle has been well settled in a long line of cases, which it is unnecessary to cite.

It, however, may be considered as a well settled principle of law, that in any case, where a person on a highway approaches a railroad crossing, and the evidence shows, that by the vigilant exercise of his senses of sight and hearing, an approaching train or cars, could have been observed or discovered in time to avoid a collision, and a collision takes place at the moment he steps or goes upon the track, he is, as a matter of law, guilty of contributory negligence, and cannot recover against the company, and it is the duty of the court to so hold, regardless of the testimony as to his having stopped, looked and listened. It was contended by the plaintiff that because this was a private siding that the public highway crossed, that the rule as to the duty of the passenger was more relax, that he was not bound to stop, look and listen, and in support of that supposition cited Ash v. Wilmington & Northern R. R. Co., 148 Pa. 133. A careful examination of the case, however, does not relax the rule of care required, when a person is about to cross a railroad track, nor does it modify the rule as to the necessity of stopping, looking and listening. In that case Ash was an employee in the planing mill, he knew of the daily use of the siding, and a couple of empty cars were standing on the siding. Just as he was about to cross the track

with a piece of scantling on his shoulder, in front of the standing cars, the engine was in the act of shunting another empty car in on to the track where the two were standing, for the purpose of coupling to them to take them out. And, the car that was shunted in, started the others just as he stepped onto the track and caught him, the accident causing his death.

Justice WILLIAMS in his opinion on pages 137–138 says: "But he knew the fact that the siding was across his path, that two cars were upon it, that they were to be taken away at some time that day, and he owed it to himself to see whether the work of removal was in actual progress before putting himself upon the track. If he had taken the trouble to look he would have seen the car approaching, that the engine had just thrown in on the siding, and by waiting for an instant, until the cars were removed, could have crossed the track in safety. Because he did not look, he put himself in the way of the cars just in time to lose his life." Under the facts as appeared in that case the Supreme Court held as matter of law that Ash was guilty of contributory negligence, and reversed the judgment of the court below, without awarding a new venire. We think the facts of the case at bar clearly brings it within the principles of law above cited. The deceased knew or should have known the siding was being used. This he could have observed while standing at the corner of High and Race streets, a few minutes before the accident occurred, while the shifting was in progress. He walked down Race street about 177 feet, and when within a few feet of the track he had an unobstructed view of the track for about 200 feet. A glance would have warned him of the approaching cars that were coming at a speed of about five or six miles an hour, yet he walked on and was struck by the cars just as he was about to step on the track, and lost his life.

Surely under the well settled principles of law, he was guilty of contributory negligence, and there can be no recovery against the company. We think the evidence failed to show negligence upon the part of the defendant company. The weight of the plaintiff's evidence clearly showed that when the cars were being shunted in on the siding, that the engine bell was being rung, and that the cars were not shunted in at an unusual rate of speed, but in the ordinary manner; that they were in

control of a brakeman, who landed them where wanted in the yard. Now unless it is negligence to shunt cars in on a siding detached from the engine, then, there was really no evidence of negligence on the part of the defendant shown. We know of no law or principle that holds that a railroad company has no right, to shift cars onto a siding by shunting them in, detached from the engine.

We are, therefore, of the opinion that the nonsuit was properly granted and should not be taken off.

And now February 16, 1899, the rule is discharged, and the taking off of the nonsuit refused.

*Error assigned* was refusal to take off nonsuit.

*John M. Dale* and *James Scarlet.* for appellant. — The question of contributory negligence was for the jury: McNeal v. Ry. Co., 131 Pa. 184; Carroll v. Penna. R. Co., 12 W. N. C. 348; Mulherrin v. R. R. Co., 81 Pa. 366; Moore v. R. R. Co., 108 Pa. 349; Marland v. R. R. Co., 123 Pa. 487; Penna. R. Co. v. Mooney, 126 Pa. 244; Connerton v. Del. & Hud. Canal Co., 169 Pa. 339; Myers v. B. & O. R. R. Co., 150 Pa. 386; Smith v. Baltimore & Ohio R. R. Co., 158 Pa. 82; Link v. Philadelphia & Reading R. R. Co., 165 Pa. 75; Beach on Contributory Negligence, sec. 67; Ogier v. Pa. R. R. Co., 35 Pa. 60.

The company was guilty of negligence: Cookson v. Ry. Co., 179 Pa. 184; Kay v. Penna. R. Co., 65 Pa. 269; Lederman v. Penna. R. R. Co., 165 Pa. 118; Penna. R. Co. v. Barnett, 59 Pa. 264; Smith v. R. R. Co., 158 Pa. 87; R. R. Co. v. Hummel, 44 Pa. 378; O'Connor v. Missouri Pacific Ry. Co., 94 Mo. 150; Continental Improvement Co. v. Stead, 95 U. S. 161; Childs v. Penna. R. Co., 150 Pa. 73; Gaynor v. Old Colony & Newport Ry. Co., 100 Mass. 208; R. R. Co. v. Hagan, 47 Pa. 244.

*John Blanchard,* for appellee, was not heard but cited on the question of contributory negligence: Carroll v. Penna. R. Co., 12 W. N. C. 348; Moore v. R. R. Co., 108 Pa. 349; Marland v. R. R. Co., 123 Pa. 487; Penna. R. Co. v. Mooney, 126 Pa. 244; Blight v. R. R. Co. 143 Pa. 10; R. R. Co.

v. Bell, 122 Pa. 58 ; Hauser v. R. R. Co., 147 Pa. 440 ; Schmidt v. R. R. Co., 149 Pa. 357 ; Myers v. B. & O. R. R. Co., 150 Pa. 386 ; Sheehan v. R. R. Co., 166 Pa. 354 ; Holden v. Penna. R., Co., 169 Pa. 1 ; Hess v. R. R. Co., 181 Pa. 492 ; McNeal v. Ry. Co., 131 Pa. 184 ; Kraus v. R. R. Co., 139 Pa. 272 ; Hovenden v. R. R. Co., 180 Pa. 244 ; Davidson v. Ry. Co., 171 Pa. 522 ; Urias v. R. R. Co., 152 Pa. 326 ; Derk v. Ry. Co., 164 Pa. 243 ; Gangawer v. R. R. Co., 168 Pa. 265 ; Haverstick v. R. R. Co., 171 Pa. 108 ; Connerton v. Del. & Hudson Canal Co., 169 Pa. 339 ; Seamans v. R. R. Co., 174 Pa. 421.

On the question of negligence, 2 Rorer on Railroads, 1010 ; Pierce on Railroads, 352, and 354.

PER CURIAM, April 30, 1900 :

The judgment in this case is affirmed on the opinion of the learned court below refusing to take off the nonsuit.