[Civ. No. 7217. First Appellate District, Division One.—September 25, 1930.]

ROBERTA J. DEAGLE, a Minor, etc., Respondent, v. HARRY SHANE, Appellant.

William M. Abbott, K. W. Cannon, Ivores R. Dains, Cyril Appel and Henry Heidelberg for Appellant.

Ford, Johnson & Bourquin for Respondent.

LUCAS, J., *pro tem.*—The only point urged upon this, an appeal from a judgment for damages in favor of respondent and against appellant in the sum of fifteen thousand

dollars for the death of respondent's father, is that the evidence is insufficient to sustain the judgment.

The decedent, at the time he received the injuries from which he subsequently died, was riding as a guest in an automobile driven by defendant Davidson. At the intersection of Broderick and Post Streets in the city of San Francisco Davidson's car collided with the one driven by his co-defendant Shane, appellant herein. The complaint charges them as joint tort-feasors, and the jury, by rendering a verdict against both, found each guilty of negligence contributing to the accident and the death resulting therefrom. The negligence, if any, of both Shane and Davidson lay in the speed at which they drove and the manner in which they operated their respective automobiles. On the question of excessive speed and on the question of who first entered the intersection, claiming thereby the right of way, the evidence is conflicting.

Appellant recognizes the well-established rule that an appellate court will not disturb a verdict of a jury or the findings of a court when there is a real conflict of evidence on material points and when there is some evidence to support the verdict or findings, but insists there is no "real" conflict here and that the testimony relied upon by respondent to create a conflict amounted to "mere swearing", as those words are used in the case of *Zibbell* v. *Southern Pac. Co.*, 160 Cal. 241, 242 [116 Pac. 513].

The case of *Keyes* v. *Hawley*, 100 Cal. App. 53 [279 Pac. 674], wherein the District Court of Appeal reversed a judgment for plaintiff in a somewhat similar case, is principally relied upon by appellant as authority for a reversal herein. In the Keyes case, however, the court said:

"As to the cause of the accident the evidence is all one way. The only theory upon which the respondent attempts to support her claim of negligence on the part of appellant is that the Bagwill car had the right of way under her interpretation of section 131 of the Motor Vehicle Act . . . as between the respondent and the appellant there is not a shadow of conflict as to the circumstances preceding the collision. . . . What appears to be a conflict in the evidence arises from a confusion of the terms in the statute."

An analysis of the evidence in the case at bar reveals, we believe, a substantial conflict. The defendant

Davidson, who was driving an Essex coach southerly on Broderick Street immediately before the collision, testified that he approached the Post Street intersection at a speed of between twelve and fifteen miles per hour; that as he had about reached the northerly property line of Post Street he first saw the Rickenbacker coupe driven by appellant Shane coming east on Post Street some fifty or seventy-five feet west of its intersection with Broderick at a rate of at least thirty or thirty-five miles per hour. Davidson claims that he entered the intersection first, started to cross it, then, applying his brakes, slowed down to ten or twelve miles per hour, and turned his car to the left in an attempt to avoid a collision. Appellant Shane, on the other hand, testified that when his Rickenbacker coupe, traveling easterly on Post Street at a speed of about twelve miles per hour, had just about reached the western property line of Broderick Street he first observed Davidson's Essex on Broderick Street twelve or fifteen feet northerly from the northern property line of Post Street. The Essex he estimated was traveling at the rate of thirty miles per hour. His own car was in second gear and his brakes were already on. He put them on a little harder, entered the intersection first, and, claiming the right of way, started to cross the intersection. When Davidson swerved to his left, driving directly at the Shane car, Shane stepped on the gas and swerved his car to the right, hoping to avoid a collision. The testimony of Davidson and of Shane is quite typical of the usual testimony given by the drivers of two colliding automobiles.

Arthur S. Gillette a patrol wagon driver for the San Francisco police department, testified that from his residence on Broderick Street between Post and Sutter he saw Davidson's car enter the intersection of Post and Broderick at the rate of thirty miles per hour. After it had crossed the curb line the witness saw the Rickenbacker in the intersection. On cross-examination he testified that he first saw the Rickenbacker just after it reached the property line of Broderick Street. At this time the Essex was some three or four feet from the property line of Post Street. He could make no estimate of the speed of the Rickenbacker.

Frank Schacker, who was riding as a guest in a Maxwell car following the Shane automobile down Post Street, cor-

roborated Shane's testimony as to the speed at which he was driving, although Schacker does not himself drive an automobile. He further testified that the first time he noticed Davidson's Essex it was traveling thirty or thirty-five miles per hour and was right at the curb line and that at that time the Rickenbacker was in the center of the intersection.

There is testimony that the collision occurred approximately in the southeast quarter of the intersection of the two streets in question; and there is also some testimony tending to show that it occurred at about the center of the intersection. Skid marks made by Davidson's car tend to discredit his testimony that he was traveling at a slow rate of speed, and the physical condition of the cars after the accident corroborates oral evidence to the effect that the right front part of the Essex came in contact with the left side of the Rickenbacker at about its center. Other evidence as to the position of the cars after they came to a stop shows that the Rickenbacker after the impact traveled some distance further than the Essex. This might be considered either as corroborating Shane's testimony that he stepped on the gas to avoid an accident, or as corroborating Davidson's testimony that Shane was traveling at an excessive rate of speed.

In the light of the foregoing this court does not feel justified in saying as a matter of law that there is no real conflict on the question of the speed of Shane's car.

What may have been in the minds of the jurors on the subject of Shane's negligence is, of course, a matter of conjecture, but what was in the mind of the trial court when it denied Shane's motion for a directed verdict appears in the record.

Counsel for Shane moved for a directed verdict on the ground that the evidence failed to sustain the allegations of the complaint as to the negligence of Shane, and on the further ground that the collision was due solely to the negligence and carelessness of Davidson. The court replied: "Well, the answer to that is that from the facts and circumstances shown in this case, it being shown by testimony which the jury is properly the judge of, that when this defendant (Shane) came into the street crossing and seeing another car coming down in that block at a very fast

speed, it becomes a question of fact whether he was guilty of negligence in going across that street in the face of a car which was bound to beat him at that fast rate of speed into the intersection, and that is a matter I cannot determine as a matter of law.''

We believe the trial court correct in its conclusion. Discarding Davidson's testimony that Shane was traveling at an excessive rate of speed and accepting Shane's statements at their full face value, we find him traveling in second gear, at the rate of twelve miles per hour, as he approached the Broderick Street property line at its intersection with Post Street. At this time and place he observed Davidson's Essex on his left on Broderick Street ten or fifteen feet northerly from the northern property line of Post Street going into the intersection at the rate of thirty miles per hour. Shane, whose brakes were already on, reduced his speed. Davidson was traveling at a rate of speed more than twice that of Shane. The distance from the property line to the curb line both on Broderick and on Post Streets was fifteen feet. To get into the intersection formed by the curb lines Davidson had not more than thirty feet to go, Shane fifteen or thereabouts. It was apparent, therefore, that Davidson would reach the intersection formed by the curb lines ahead of Shane, yet Shane, instead of stopping, chose to proceed across the intersection in the face of the oncoming car. Shane may actually have had the right of way as against Davidson, but that is not sufficient to warrant us in holding as a matter of law that Shane in taking advantage of that right was free from negligence in all the circumstances of the case, particularly in so far as an innocent third party was concerned. It was the province of the trial court jury rather than this court to say whether or not Shane was guilty of negligence which, concurring with that of Davidson, contributed to the injuries resulting in the death of Deagle.

This conclusion is amply supported by the authorities, outstanding among which is the case of *Donat* v. *Dillon,* 192 Cal. 426, 429 [221 Pac. 193].

The judgment appealed from is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 24, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 24, 1930.